UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| In re | § | Chapter 13 |
| | § | |
| **DOMENICO DI CAMPO FALCHINI** | § | |
| Debtor. | § | Case No. 24-10973-LMI |

**MOTION TO:**
**(1) CONVERT, and ALTERNATIVELY TO DISMISS; and, if converted, or alternatively if both dismissal and conversion are denied, (2) (a) RELIEF FROM THE AUTOMATIC STAY TO PROCEED WITH THE UNITED STATES DISTRICT COURT FOR NORTHERN DISTRICT OF TEXAS IP ACTION; and, if converted, (b) ADOPTING ANY FINDINGS OF LIABILITY FOR INTELLECTUAL PROPERTY INFRINGEMENT IN THAT CASE AS A FINDING OF BY THIS COURT AS TO NON-DISCHARGEABILITY UNDER 11 U.S.C. SECTION 523**

Creditor Vulcan Arms, LLC ("Vulcan") moves for an order converting this case to a Chapter 7 proceeding. Alternatively, Vulcan moves for an order dismissing the case for cause. As a second alternative and as applicable, Vulcan moves for an order (a) granting relief from the automatic provisions of 11 U.S.C. § 362(a) to permit Vulcan to proceed in the United States District Court for the Northern District of Texas in the civil action entitled *Vulcan Arms, LLC* v. *Prepcision, LLC; Pilotnavia, LLC; Domeinico Di Campo; and Navia Ramon*, Case #: 3-22-cv-000729-L (the "ND Texas IP Action"), except for any enforcement against the Debtor Domenico Di Campo Falchini ("Debtor") or his estate (the Debtor is a defendant in the ND Texas IP Action) and, if converted, and (b) for the adoption of any finding of liability for intellectual property infringement by the ND Texas IP Action Court against this debtor as a finding by this Court as to non-dischargeability by this Court.[1]

---

[1] Vulcan notes that it has not explicitly complied with certain Guidelines for Motions for Relief from Stay in this motion. Many of the requirements are not applicable to the Motion. Specifically, the amount of the debt is not stated because it must be liquidated in the Northern District of Texas IP action and the Indebtedness Worksheet is omitted because it is not applicable.

This Motion is brought pursuant to 11 U.S.C. §§ 362(d) and 1307, Federal Rule of Bankruptcy Procedure 4001, and Rule 4001-1 et seq. of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

### INTRODUCTION

1. Since 2020, the Debtor, his web of companies, and his business partners and associates have engaged in willful, intentional, and widespread counterfeiting of Vulcan's intellectual property with sales of over $10 million and illegal profits of more than $5 million – based upon the infringement of Vulcan's work. They have willfully and intentionally infringed on Vulcan's trademarks and goodwill, have manipulated internet search-results to re-direct and confuse consumers looking for Vulcan's products (firearm accessories), and have distributed cheap, knockoff counterfeited products that pose a significant health risk to unknowing consumers and has caused significant harm to Vulcan. Vulcan filed the ND Texas IP Action against the Debtor, his company, and one associate in March, 2022 seeking to stop this conduct and collect damages. That case is trial-ready, with discovery concluded, a joint-pre-trial order filed, and a trial date set. After the latest trial date was set, the Debtor, and his other individual co-defendant, filed bankruptcy[2] in yet another scheme to hope to avoid responsibility.

2. ***The Debtor did not file this case to reorganize in good faith under Chapter 13***, which is apparent from his deficient schedules and statement of financial affairs. He failed to disclose details of numerous businesses he is associated with and Vulcan as a creditor, even as disputed or contingent one, in spite of the federal lawsuit set for trial (though he did disclose his 2022 Lamborghini and a 2020 Land Rover (both of which he has substantial equity in)). These

---

[2] The companion case to this Chapter 13 proceeding is Cause No. 24-1105-RAM filed by Ramon Navia Rosales in the Bankruptcy Court for the Southern District of Florida. The similarities in the filings with this case are remarkable. A Motion to dismiss, convert, and lift the stay based on the Debtor's ineligibility for Chapter 13 and bad faith is being filed contemporaneously with the filing of this Motion in that case.

disclosures, and the performance of the Debtor at the 341 meeting, led the Chapter 13 Trustee to not recommend confirmation of the Debtor's plan – which, again, does not propose to pay Vulcan anything – and to ask questions about the transfer of personal funds to Debtor businesses. ***Instead, the Debtor filed this bankruptcy to delay or avoid trial on non-dischargeable claims***. This is not proper, and the Debtor may not remain in Chapter 13.

## BACKGROUND FACTS

### A. Vulcan's Business and Valuable Intellectual Property

3.  Vulcan was founded in 2018, the company sells innovative, reliable and high-quality product in the firearm accessories industry. Vulcan developed, patented and trademarked, marketed, and sold many of these products under the names QUICKDRAW AND QUICKMAG. It expended significant resources in developing, trademarking and patenting, and marketing those products – including with advertising on Instagram, Amazon and Facebook.

### B. The Debtor's Infringement

4.  The Debtor has intentionally infringed upon and diluted Vulcan's intellectual property since 2020. The Debtor, his companies, and his business partners and affiliates established a counterfeit, but substandard product line of their own – selling cheap knockoffs of firearm accessories to an unsuspecting public, which presents a serious health risk. The Debtor, his companies, and his business partners and affiliates have also used Vulcan's trademarks on the defendant's competing website, manipulated metadata to re-direct searches for Vulcan products to the Debtor's websites and essentially "copying and pasting" Vulcan's prior photographs, videos, and/or advertisements to promote and sell the counterfeit goods. This infringing conduct has led customers looking for Vulcan products to buy counterfeited, poorly-made goods (the business has an F rating with the Better Business Bureau). All of this damaging, infringing conduct was done intentionally, willfully, and maliciously.

### C. The ND Texas IP Action

5. On March 30, 2022, Vulcan filed its *Original Complaint and Application for Injunctive Relief* **[Exhibit 1]** (the "Complaint"), commencing the ND Texas IP Action against the Debtor, Prepcision, LLC, Pilotnavia, LLC and Navia Ramon. The Complaint includes causes of action for trademark infringement, false designation/advertising, trademark dilution, unfair competition, counterfeiting, and false designation of origin, and also sought an injunction. *Id.*

6. The parties filed a joint pre-trial order in the ND Texas IP Action on January 8, 2024 and the action was set for an estimated three to four day jury trial in January 2024. **[Exhibit 2].** Due to its criminal docket, the Court issued a *sua sponte* Order postponing trial to a January 2025. At the same time, Debtor's and other individual defendant's counsel withdrew. *See* ND Texas IP Action at Docket No. 53. This withdrawal was the third withdrawal of Debtor's trial counsel.

7. On February 8, 2024, the Northern District of Texas ordered that the Debtor, and all other defendants in that action must obtain counsel, or in the case of individual defendants, inform the court of their intent to proceed pro-se by April 9, 2024. *Id.* at Docket No. 54.[3] If the defendants failed to do so, the court indicated it would direct the clerk to enter an entry of default against the defendants for their failure to comply with its orders. *Id.*

8. Discovery has been conducted and concluded, and defendants and Vulcan have filed numerous pre-trial motions, the proposed pre-trial orders, *voir dires*, exhibit/witness lists, jury instructions, jury charges have been filed. *Id.* at Docket Nos. 38-40; 42-47; 50. The ND Texas IP Action is ready for the jury trial.

---

[3] No suggestion of Bankruptcy has been filed by the Defendants as of this date, nor has it been by the filing of this Motion. The Northern District of Texas Court entered the order *sua sponte*.

**D.    The Bankruptcy and the Debtors' Deficient Schedules**

9.    On January 31, 2024, the Debtor filed the instant bankruptcy. Also on January 31, 2024, the Debtor filed his schedules and statement of financial affairs. *See* Docket No. 1. In these filings, the Debtor represented that:

- he is self-employed, and has been for nine months, and that he allegedly receives $8,000 a month from his self-employment;
- he had cash and bank account deposits totaling approximately $17,000;
- he owns no real property, but does own two cars (a 2022 Lamborghini [free and clear of any liens] and a 2020 Land Rover);
- he owns two businesses (each of which only have bank accounts with minimal cash, but own nothing else) and that he has allegedly received no distributions this year or last year from this business, or any other he owns;
- he only has seven total creditors, with four creditors who are listed more than a $0 balance owed (with all seven creditor owed, collectively, no more than $61,000);[4]
- Vulcan was not a creditor, even a contingent or unliquidated one (though the ND Texas IP Action was disclosed); and
- that the Debtor was a party to **no** executory contract or unexpired lease.[5]

10.   On February 1, 2024, Mr. Ramon Navia Rosales, the other individual defendant in the ND Texas IP Action, filed his own Chapter 13 proceeding that was assigned to a Judge Mark in this District under Case No. 24-11057.[6]

11.   On February 15, 2024, the Debtor filed a proposed Chapter 13 Plan. Docket No. 13 (the "Plan"). On March 7 and March 20, 2024, the Chapter 13 Trustee filed notices of deficiency for confirmation of the plan. Docket Nos. 15, 18. The Debtor also attended his section 341 meeting on March 15, 2024, which sparked the second Trustee deficiency notice. In her

---

[4] One creditor is listed twice because it appears the debtor has two accounts with them, though on one account nothing is owed.

[5] It is not clear as to what right of possession he has in his listed residence. The Debtor lists a $4,250.00 a month expense for rental or home ownership expense in Schedule J, but avers he owns no real estate, but also says he is not a party to any unexpired leases in Schedule G.

[6] Vulcan is filing a companion motion to this one in that other bankruptcy because of markedly similar facts, if not more egregious, regarding a bad faith filing and ineligibility for relief under Chapter 13.

filings, the Chapter 13 Trustee noted that the Debtor needed to provide further explanation for large transfers, that the Debtor had not provided tax returns, bank account statements and documents of active businesses of the Debtor. ***As to this last point, the Chapter 13 Trustee listed twelve other companies in which the Debtor apparently has, or had, an interest but that were not disclosed to creditors***. The Trustee listed the following legal issues and questions precluding confirmation:

- Why is the Debtor transferring personal funds into both of his business accounts?
- Provide evidence of debt owed for Lamborghini – appears to be paid in full per Schedules
- Basis of debt with Bitty Advance 2, LLC (39K) on Schedule F
- Provide evidence of "Other expenses" on P&L of business in 2023 tax return
- Amend SOFA#27 to disclose the following closed businesses per Debtor's testimony: Collection Exotics, LLC., Imperium Jewelry, LLC., Pilotnavia, LLC., Ventotto, LLC, Vespertine, LLC., Group Dinavi, LLC., Eccoventura, LLC., Iconworld Florida, LLC., Dinavi & Silva, LLC., and provide explanation as to what happened to the assets of the business?
- Amend Schedule A/B to disclosure ownership interest in ClubCommerce, LLC., value same and provide all related business debt
- Provide clarification as to whether Dinavi Automation, LLC is closed
- Provide letter of explanation and evidence that Di Campo R, LLC., is owned by Debtor's cousin

12.     On March 11, 2024, Vulcan filed a proof of claim. Claim No. 3. The Claim sought unliquidated damages and relief pertaining to the subject matter of the ND Texas IP Action and reserved rights. *Id.*

## ARGUMENT

### A. The Debtor is Ineligible under Chapter 13 Because of his Income

1.      "A debtor must have 'regular income sufficient to make payments under a plan to be eligible for Chapter 13 bankruptcy." *In re Turner*, 519 B.R. 354, 359 (Bankr. S.D. Fla. 2014) (citations omitted). As the Eleventh Circuit explained, regarding making this determination:

> When a debtor is a wage earner, she is required to file copies of her pay stubs showing the amount of her income [which] gives the Court and the Trustee a pretty good starting point to see if a debtor will be able to fund a Chapter 13 Plan. When a debtor is self-employed, the task is more difficult—**meaning that the burden on the debtor is greater**…

*In re Muhammad*, 536 B.R. 469, 474 (11th Cir. 2015) (emphasis added).

2. Moreover, it is hornbook law that Chapter 13 protection is not available to a debtor whose monthly expenses exceed his or her monthly income:

> The debtors' petition reveals that their monthly expenses exceed their monthly income by $8.00. The bankruptcy judge reasoned that because the plan required no payments, the debtor's income was sufficient to meet the "payments" proposed under the plan, and therefore the debtors were eligible for Chapter 13 relief... We think that s 101(24) contemplates that a debtor make payments, and that the debtor's income sufficiently exceeds his expenses so that he can maintain a payment schedule. The key statutory language is "make payments." The debtors in this case have no excess income out of which to "make payments", and therefore they are not eligible for Chapter 13 relief under s 109(e).

*In re Gavia*, 24 B.R. 573, 575 (9th Cir. B.A.P. 1982); *accord e.g., In re Speakman*, 2009 WL 310004, at *1 (Bankr. D.R.I. 2009) (dismissing Chapter 13 proceeding because debtor's monthly expenses exceeded his monthly income by approximately $500).

3. The Debtor has not met and cannot meet his "greater" burden. He claims his income is $8,000 a month, but, during the nine months he has allegedly been working through his company, he has taken no distributions from that company. The Debtor has not alleged a plausible, eligible income to qualify for Chapter 13, let alone make plan payments.

4. Therefore, the Court should dismiss or convert the Debtor's case.

### B. The Debtor did Not File this Case in Good Faith

#### i. *The Debtor Filed this Case to Leverage a Two-Party Dispute, not to Reorganize*

5. Though "[p]etitions in bankruptcy arising out of a two-party dispute do not per se constitute a bad-faith filing by the debtors," a debtor may not use "Chapter 11 to resolve two-party disputes in the bankruptcy court when such litigation is still pending in a non-bankruptcy forum prior to the commencement of the case." *In re Outta Control Sportfishing, Inc.*, 642 B.R. 180, 185 (Bankr. S.D. Fla. 2022) (citations omitted). "As such, courts have found bad faith where

there "is an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction." *Id.* (citations omitted).

6.     This is such is a dispute.  The Debtor – one individual – owns a Lamborghini, and a Land Rover and does not have debt that he needs to restructure.  His only secured creditor is owed $18,000 on one of his two luxury cars.  His non-exempt assets total over $210,000.  He lists unsecured creditors (only seven) that are collectively owed, according to the Debtor, less than $61,000, and he says he is not a party to a single executory contract or lease.  The Debtor was making payments as they were due.  In this situation, "where the debtor 'faces no threat from any of its other purported creditors [than the creditor in litigation], [the debtor'] financial problems are a two-party dispute suitable for resolution' outside of the bankruptcy court, which supports a finding of bad faith." *Id.* (citing *In re State St. Houses, Inc.*, 305 B.R. 738, 742 (S.D. Fla. 2003), aff'd, 356 F.3d 1345 (11th Cir. 2004)).

7.     The sole reason the Debtor filed this case was to avoid having to face the determination of liability and liquidation of the amounts he owes to Vulcan in a case in Dallas that was on the eve of trial.  The Debtor first stalled that trial by switching out counsel three times, but, with the Northern District of Texas having put procedures in place to stop this again, the Debtor now seeks to stall the trial by filing bankruptcy.

   ii.  *The Court should Dismiss this Case because of the Debtor's Specious Disclosures*

8.     The other "smoking gun" that the Debtor is not respecting the bankruptcy process and views this forum as a place to park while his trial date approaches in the ND Tex IP Action are his incomplete, suspicious disclosures.  On this point, the Eleventh Circuit directed that a court examine "the accuracy of the [Debtor's disclosure of] statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court" when assessing good faith.  *In re Kitchens*, 702 F.2d 885, 889 (11th Cir. 1983).  This is because "accurate disclosures are a

foundational expectation of those seeking bankruptcy relief," and "the easiest way to violate [Chapter 13] is to misrepresent, lie, or otherwise mislead the court." *In re DeVaughan*, 2023 WL 4356356, at *3 (Bankr. M.D. Ala. July 5, 2023) (dismissing case).

9. In addition to the items the Chapter 13 Trustee has identified as problematic and precluding confirmation - i.e. – "Why is the Debtor transferring personal funds into both of his business accounts?" and missing information of closed businesses and their assets - some of the omissions this Court should consider when fashioning the appropriate remedy are:

- the failure to list Vulcan as a creditor, *see In re DeVaughan* (debtor did not list judgment creditor as creditor in bankruptcy);
- failure to either list his residence as his home, or, if rented, list the executory contract for the lease of his residence,
- failure to put forth a plan that at least purports to pay creditors over what they would receive in a Chapter 7 case.
- There are two business listed in the Debtor's schedules but the value of each business is only listed as the value of the amount of money they each have in their respective deposit accounts. No other information is given.
- As previously noted, Schedule J lists $8,000 per month as income from a business but the Statement of Financial Affairs indicates no money has flowed out of that business for over a year and the only distributions it ever made to the Debtor is listed as $20,200 in 2022.
- Failure to identify several businesses he was associated with, including the corporate entity in the ND Tex IP Action.

10. "The 'hallmarks of bad faith filing' include a two-party dispute and an absence of a sincere desire to reorganize the financial affairs of the debtor, with the real test being 'the presence of the honest intention of the debtor, the actual need, and the ability to effectuate the aim of the reorganization.'" *In re Outta Control Sportfishing, Inc.*, 642 B.R. at 186 (citing *In re Serfass*, 325 B.R. 901, 905-06 (Bankr. M.D. Fla. 2005)). Here, both hallmarks are met. The Debtor's - sloppy at best, or fraudulent at worst - disclosures show he is not trying to reorganize or to obtain a fresh start. Instead, he is trying to dodge litigation where he will be found liable for counterfeiting Vulcan's business and intellectual property. He has not and is not taking the

bankruptcy process, or his role as debtor-in-possession, seriously, because this case is just a litigation tactic for the ND Texas IP Action (for both him and his co-defendant). As the Eleventh Circuit stated, a court should consider the totality of the circumstances test and "the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose *or* spirit of [Chapter 13].'" *In re Kitchens*, 702 F.2d at 888 (emphasis added). Here, there has been such an abuse of the provisions, purpose *and* spirit of Chapter 13 – and the case should be dismissed or converted.

### C. Alternative Relief from the Automatic Stay in the event the case is not dismissed

11. According to the Debtor's Plan, Vulcan is given no treatment and will not be paid on its claims set for trial in eight months. If the Court converts the case to a Chapter 7 instead of dismissing it, or even if the Court allows the Debtor to continue in Chapter 13, Vulcan requests that the Court grant relief from the stay, so that Vulcan can liquidate its contingent claim against the Debtor in the ND Texas IP Action that Vulcan filed in 2022.

12. Section 362(d) provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . .

11 U.S.C.A. § 362(d). Thus, Section 362(d) expressly authorizes the bankruptcy court to grant relief from the automatic stay "for cause." *Id*.

13. "The party seeking relief from the automatic stay must establish a prima facie case of cause for relief." *In matter of Shree Meldikrupa Inc.*, 547 B.R. 862, 871 (Bankr. S.D. Ga. 2016). "'Cause' is not defined under § 362(d) and therefore is assessed on a case-by-case basis, with courts being afforded wide latitude in deciding whether to grant relief." *Lord v. True Funding,*

*LLC*, 618 B.R. 588, 592 (S.D. Fla. 2020) (citations omitted).  In the Eleventh Circuit, a debtor's lack of good faith in filing a petition for bankruptcy may be the basis for lifting the automatic stay. *Id.* (citing *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir. 1987)).

       i.    *The Stay Should be Lifted Because this Case was not Filed in Good Faith*

14.    Here, Vulcan incorporates the previous sections of this Motion that demonstrate the lack of good faith of the Debtor.  This is an independent basis to lift the stay.  *Id.*

       ii.    *The Stay Should be Lifted Under the Applicable Multi-Factor Test*

15.    Further, allowing a matter to proceed in a more appropriate forum constitutes "cause" to lift an automatic stay pursuant to Section 362(d)(10).  *See, e.g., In re Murray Indus., Inc.*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990).  Here, the stay should be lifted as to the ND Texas IP Action under a national, multi-factor test that considers the following factors when balancing whether to continue to stay another trial:

> (1) trial readiness of proceeding in non-bankruptcy forum; (2) judicial economy; (3) necessity of resolving preliminary bankruptcy issues; (4) costs of defense or other potential burden to debtor or estate; (5) creditor's chances of success on the merits; (6) specialized expertise of non-bankruptcy forum; (7) whether damages or claims that could result from non-bankruptcy proceeding might be subject to equitable subordination; (8) extent to which trial of case in non-bankruptcy forum would interfere with progress of bankruptcy case; (9) anticipated impact on movant, or other non-debtors, if stay was not lifted; and (10) presence of third parties over which bankruptcy court lacks jurisdiction.

*See e.g. In re Mainous*, 610 B.R. 916, 920-921 (Bankr. M.D. Ala. 2019) (citations omitted).

16.    To establish cause for lifting the automatic stay, the moving party is not required to establish a plurality of the factors.  *In re Unanue-Casal*, 159 B.R. 90, 96 (D. P.R. 1993).  Rather, courts routinely grant relief from the stay based only a few factors.  *Id.*

17. With the balance of this Motion incorporated herein, and, as explained below, the factors militate in favor of granting relief from the automatic stay to allow Vulcan to proceed in the ND Texas IP Action.

(1) *trial readiness of proceeding in non-bankruptcy forum*:

This factor favors lifting the stay as the parties were ready for trial, have completed discovery, previously scheduled to hold that trial in January, 2024 and now have a trial date upcoming.

(2) *judicial economy*:

This factor favors lifting the automatic stay, because the Northern District of Texas has already dealt with this case for two years, is uniquely qualified to hear intellectual property disputes, and a jury trial has already been requested.

(3) *necessity of resolving preliminary bankruptcy issues*:

This factor favors lifting the automatic stay, as there are no preliminary bankruptcy issues that need to be resolved to move forward with the ND Texas IP Action.

(4) *costs of defense or other potential burden to debtor or estate*:

This factor is neutral. The causes of action in the ND Texas IP Action have to be tried and would be largely the same on the Debtor regardless of where it was tried.

(5) *creditor's chances of success on the merits*:

This factor favors lifting the automatic stay. The facts upon which the ND Texas IP Action are to be tried are largely undisputed and the likelihood of Vulcan prevailing on the merits are high.

(6) *specialized expertise of non-bankruptcy forum*:

This factor favors lifting the automatic stay. The District Courts are the proper forum for intellectual property disputes and are therefore very familiar with the issues that arise in such case and also must conduct jury trials.

(7) *whether damages or claims that could result from non-bankruptcy proceeding might be subject to equitable subordination:*

This issue is not applicable in the present case.

(8) *extent to which trial of case in non-bankruptcy forum would interfere with progress of bankruptcy case*:

It is essential that ND Texas IP Action case be decided. The determination of this case will be dispositive on, for instance, whether any plan filed by the Debtor is feasible or fair and equitable. Therefore, this factor favors lifting the automatic stay.

(9) *anticipated impact on movant, or other non-debtors, if stay was not lifted*:

The delay caused in protecting Vulcan's intellectual property rights could be extreme – Vulcan has requested an injunction - and therefore this factor favors lifting the automatic stay. Other non-movants, other than the "companion bankruptcy case in which substantially this same motion is being filed, would not be impacted.

(10)   *presence of third parties over which bankruptcy court lacks jurisdiction*:

This issue is not a factor in this case and is therefore neutral.

18.   Eight of the ten factors support lifting the automatic stay, and the remaining two factors are neutral. As a result, the stay should be lifted to allow the ND Texas IP Action to proceed to trial and judgment.

### D. Adaptation of the ND Texas IP Action's Findings of Fact and Conclusions of Law

19.   In the event the case is converted, Vulcan will pursue a non-dischargeability action against the Debtor under 11 U.S.C. 523(a)(6).

20.   The very facts and issues that will be decided in a jury trial in the ND Texas IP Action, and the findings of fact and conclusions of law that will arise therefrom, will determine

whether the debt of the Debtor to Vulcan is nondischargeable. For efficiency, to avoid inconsistent judgments, and for the sake of judicial economy, the non-dischargeability action should be abated upon filing and service of the same and the stay lifted as requested above to allow the ND Texas AP Action to proceed to trial and judgment. After the ND Texas IP Action case is tried and a final judgement rendered, this Court should consider the decisions and determinations made therein and consider adaptation of the same in any non-dischargeability case filed by Vulcan against the Debtor and then, determine whether any issues reman to be tried in the non-dischargeability action or if a judgment should issue, entering a final judgment in the non-dischargeability case.

21. Case law across the nation, this Circuit, and this District, are clear that "[i]ntentional infringement of intellectual property rights and cybersquatting are inherently harmful activities—the intent to harm property of another is a necessary component of the claims themselves." *Nguyen v. Biondo (In re Biondo)*, 2014 WL 2702891 (Bankr. SD Fla., 2014), citing to *Symantec Corp. v. Cristina (In re Cristina)*, 2011 WL 766966, at *4 (Bankr. S.D. Fla., 2011) (holding that one who intentionally infringes knows that injury is sure, or substantially certain, to result); *Smith v. Entrepreneur Media, Inc. (In re Smith)*, 2009 WL 7809005, at *10 (B.A.P. 9th Cir. Dec. 17, 2009) ("[I]ntentional trademark infringement is a 'categorically harmful activity.'"); *Star's Edge v. Braun*, 327 B.R. 447, 451 (Bankr. N.D. Cal. 2005) ("[C]opyright infringement is a categorically harmful activity.").

22. The findings that will be made in the ND Texas IP Action are the same as those that need to be determined for a finding of non-dischargeability. As explained above, the ND Texas IP Action is well-advanced and is ready for trial in the near future. Determinations to be made regarding the facts, whether or not there was an intentional intellectual property infringement (as opposed to reckless), and, if liability was found by whom, and, if liability is found what the

resulting damages are, will determine whether or not there is a claim by Vulcan against the Debtor, the amount of that claim, and whether or not that debt is dischargeable. This Court should allow that action to proceed, abate the to-be-filed non-dischargeability action and, upon final judgment of the ND Texas IP Action, adopt the findings of fact and determination about liability and damages as those of this Court for deciding on the non-dischargeability action.

## CONCLUSION

23. Based on the foregoing, Vulcan respectfully requests that the Court dismiss the case or, alternatively, issue an order converting this case to a Chapter 7 proceeding cause and (2) (a) granting relief from the automatic provisions of 11 U.S.C. § 362(a) to permit Vulcan to proceed with ND Texas IP Action for all purposes, save and except enforcement of the action against this Debtor, and (b) adaptation, as appropriate, of the ND Texas IP Action's finding of facts and conclusions of law in any non-dischargeability action filed by Vulcan against the Debtor.

Dated: April 11, 2024

Respectfully submitted,

DENTONS US LLP

*/s/Jonathan Kaskel*
Jonathan Kaskel
Florida Bar No. 52718
Jonathan.kaskel@dentons.com
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 537-0009
Clay M. Taylor
Texas Bar No. 24033261
Clay.taylor@dentons.com
Victor C. Johnson
Texas Bar No. 24029640
Victor.johnson@dentons.com
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201

***COUNSEL FOR VULCAN ARMS, LLC***

## CERTIFICATE OF CONFERENCE

On April 2, 2024, I conferred with the Chapter 13 Trustee's Staff Attorney assigned to this case. The Chapter 13 Trustee currently takes no position on the Motion reserving her decision until after she has a chance to review the Motion upon its filing. On April 10, 2024, I attempted to confer with Debtor's counsel and had to leave a message with their offices. I have not heard back from them prior to the Motion being filed and therefore presume at this time that the Debtor is opposed to all relief requested herein.

/s/ Clay Taylor
Clay Taylor

## CERTIFICATE OF SERVICE

I hereby certify that, on April 11, 2024, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF notification.

/s/Jonathan Kaskel
Jonathan Kaskel